The first case we'll hear today is NLRB v. 800River Road. It's got two docket numbers, 182336 and 182426. Good morning, Your Honor. Good morning. May it please the Court. My name is Steve Mitchell. I represent Woodcrest Healthcare Center, which I'll refer to as the center throughout. I'd like to reserve two minutes for rebuttal. That'll be granted. Thank you. Thank you. Your Honor, this case is about motive. What was the center's motive in 2012 when it gave and provided benefit improvements to all the employees at Woodcrest except those employees that were eligible to vote in an upcoming union election? In 2015, the Third Circuit remanded this very issue because the board found an 8A3 violation simply because the center treated one group differently from another. And the board needed to apply the Great Dane case. That's correct. The court explained that that's not enough and ordered the board to apply the correct test under Great Dane, which requires the board to examine the employer's motive for different treatment. In this decision, the court provided specific instructions on how to apply Great Dane. And most important, it made clear that the record was not developed regarding the issues that should have been determinative. We're back today because the board failed to follow the court's instructions. They misapplied the Great Dane standard and used the same record that was undeveloped to come up with the same incorrect record. Did you move to reopen the record? No, sir, we did not move to reopen. We did move to reopen because this court stated that the record as it stood was insufficient for the general counsel to prove their case. In our position, we stood with the record that they said was insufficient to prove the case and pointed out what was in the record that showed that there was no motive or no intent to discourage any activity. Well, you said in your brief a few times, I'm not sure it's wholly accurate, but that we were told the board they had to reopen the record. I'm not sure that's the case, right? We didn't tell the board they had to reopen. No, sir, Your Honor, you're correct. You didn't tell the board. I think that we could infer that the board needed to reopen the record if they did not want to reverse their decision. By stating that the record was undeveloped with regard to the issues that should have been determinative, it would therefore mean that if they wanted to get issues that were determinative of the issue that they were trying to present, which is that we were in violation of the act and they would need to present more evidence, more evidence of intent specifically. And I think that goes to the instructions that the court provided when it said that as a threshold matter that the court should determine, excuse me, the board should determine whether the center engaged in one of two types of discriminatory conduct which could have an adverse impact on the employees or effect on the employees. One is if it was determined if it was inherently destructive. If it was inherently destructive, then in that situation they wouldn't have to show motive. They could simply infer motive. This is not an inherently destructive case. These facts don't match the same type of facts as an inherently destructive case. If they in turn found that it was comparatively slight effect and the employer failed to come forward with a legitimate substantial business reason, then at that point there would also be the ability to infer motive. But other than those two exceptions, the board should not infer motive. The Congress was clear in terms of Section 8A3 that you have to show motive. And the Supreme Court came up and they basically explained there were two exceptions and this doesn't fall in any of the exceptions. Now what the board went on to do instead of applying the test as instructed is they simply determined that the conduct was discriminatory and had an adverse effect on the employees. But there's no testimony in the record that the conduct had an adverse effect on the employees. They rely solely on the foreseeability of what actually happened. There's nothing in the record that says that one of the employees, one of the employees that was voter eligible says we thought that we weren't going to get the benefits or we were told we weren't going to get benefits or we were told that it was because of the union. There's no testimony like that. So what they rely on is foreseeability. And foreseeability is really reserved for inherently destructive conduct. That's the whole point of it. It's conduct that's so egregious that you have to foresee, that the employer has to foresee that it's going to be a problem. But is this a burden shifting? I'm afraid what you're basically advocating is what we told the board that they shouldn't do, which is sort of a but-for analysis. I mean it's a burden shifting thing. Didn't it go through the steps? It is. Well, it is a burden shifting analysis. But my point is that they have to show that there was an adverse effect. And what they're relying on to show that there's an adverse effect is foreseeability. And foreseeability is really deemed to go with inherently destructive conduct. I thought you said they had to show motive. Now you're saying effect. Those are two different things. Well, the first step is they have to show an adverse effect, that it had some type of adverse effect. Well, that was established, wasn't it? I thought your argument was sort of this is analogous to what we see in the McDonnell Douglas. I know it's Great Dane. It's different. But it is analogous, I think, because you've proffered legitimate reasons for doing what you did. We have. And I thought your argument was they haven't come forward with any evidence of motive or pretext to undermine your two legitimate reasons that you've proffered. Isn't that your argument? That is my argument. But the first part of the argument is they didn't even get to the point where we had to produce a legitimate and substantial business reason. Yeah, I don't know. That's a pretty light burden. Yeah, very light. Well, it's a light burden, but it is a burden. But with that said, even if they did meet that burden, even if they did meet that burden. I mean, there's circumstantial evidence that goes their way. The timing of this is suspect, is it not? The timing is suspect. The March 5th memorandum. Yeah, but it couldn't have gone an extra four days. You know, I don't know. Well, I understand. And let's assume the board does meet that burden, the low burden. Well, was there any testimony at all before the board? No testimony was taken, right? No, sir. No, there was testimony taken by Mr. Jimenez and two of the managers, two of the administrators at the facility. And what did they say? Testimony. Did it have something to do with the motive? I would submit that the testimony had no testimony regarding the motive. Okay, so the board knew exactly what had happened factually, but you didn't explain why it was done, right? We didn't explain why. We did not explain in testimony, but our stipulation does support a legitimate and substantial business justification. Namely, the outcry after you changed the policy in January. I'm sorry, excuse me? The outcry because of the policy change in January. There was a policy change? That was your first articulated reason was when we changed the policy in a detrimental way, the employees were very unhappy, so we had to switch it back. And the employees were dropping out of the plan, so we made a change to do that. And that's a stipulation in the record? That is a stipulation in the record. The other thing that's in the stipulation that's in the record is how we announced it. We did not announce it to the voting employees. We took very careful steps to avoid having the voting employees know about it. In our affirmative defense in our answer, we specifically stated that the center had an obligation to refrain from promising benefits during the critical period. The legitimate business reason is we were trying to preserve the integrity of the election. So we believe that we did come forward with that evidence. And I think the board's position that we did not come forward with enough evidence is inconsistent with this court's initial decision, where it said that the record had not been developed regarding the issues that were determinative. And this court could have done exactly what the U.S. Supreme Court did in Great Dane if there had not been any evidence of a legitimate and substantial business reason, this court could have simply told the board how to apply the test and then held right then on the record without remanding it that the company had not even attempted to put forth a legitimate and substantial business reason. Judge Hardeman asked you about reopening the record, and that's one of your points of error. What would you put in if you had the opportunity? What we would put, well, there's a couple of things. First, when they were actually putting testimony in that would show intent, we would cross-examine their witnesses and try to undermine their credibility. That would be one thing. The other thing, though... That's tantamount to saying it's not your burden, right? Well, that was the first thing I was saying. We do have a... It's their burden. Once you've articulated these legitimate reasons, it's their burden to show motive. That's correct. Consistent with the burden-shifting framework that Judge Gigeras mentioned before. That's correct. So we would try to... So your initial position, as I understand it, is you don't have to come forward with anything. You've already carried your burden. It's shifted to them. And that's why you want to cross-examine their witnesses when they come forward and say, here's the evidence of ill motive. That's correct. Okay. In addition, what we would put on as evidence is we would put additional evidence, as they pointed out, of the rationale for why we did it. We could provide testimony from the employer's witnesses. We would also be prepared to bring in witnesses from the insurance industry to talk about the timing issue. And it's not like you can... In this type of situation, you can't just wave a wand and all of a sudden change the benefits. Can I ask you just a general question? There's a lot of... I mean, I'm not going to say... I don't want to say wheel-spinning, but Union 1, what are you looking for exactly here? I mean, we're not... What's really at stake at this point? Just the mere fact of a violation of A1 and A3? Well, I think, yeah, 8A3... There's a violation of 8A3 of having been found to be discriminatory in the actions that it took. The company did attempt to take the appropriate action in this situation and believes that the board has a burden to meet. I think from another standpoint is if you... What the board tries to do is even if they say, basically, if you did come forward with a substantial and legitimate business reason, we just don't find it legitimate. And what they rely on when they say they don't find it legitimate is they go back to that foreseeability. I'm not sure you're answering... I'm interested in Judge Shigaris' question. What's the practical upshot here? Is it the principle of the thing? Is there money at stake? Maybe there's some money at stake. Most of it's the principle of the thing. Setting a precedent? Yes. So it's more declaratory in nature. It is. And also the way the board is analyzing this and taking steps, their analysis of this is incorrect. And we believe that it should be corrected. And this court told them how to analyze it. And basically what they did is they tried to marry the inherently destructive conduct when it doesn't match the facts here. If you look at the cases that they cite, they cite cases like Pacific Water and Gas, Great Atlantic and Pacific Florida Steel. And the facts, as the board presents them in their opinion, makes it like there was a center-wide announcement where all the employees knew about it and all the employees knew they weren't getting the benefit. And that's really more akin to these cases that they cited. These are cases... They posted things on the bulletin board. Yes, and where they had campaign literature and where it made it crystal clear. That's far different from a situation here. I say it's a huge leap for them to say that the foreseeability is here. We took a memo. Yes, sir. I know it wasn't published to the other people, but in a business like this, the ones who don't get word of it always get word of it, right? Especially when you've got a union election coming up. Can't we infer that? Some of them did hear about it, didn't they? Well... Was that a finding? I'm sorry. Was that a finding here? There is a finding that a few did hear about it, but there's no finding that they didn't think they were getting it. What they heard is that the company was going to look at the benefits for other employees at that time. That's what it has in the memorandum. It doesn't say that the voting employees are not getting it. And what the board is asking us to do and what the general counsel is asking us to do is to take a huge leap and to find that we would have to foresee that we would take a memo, that we would put it in an envelope, that somebody would find it, that those people would glean from it they weren't getting something, and that they would blame the union. There was testimony that somebody... There was actual testimony that someone saw the letter on a break room table, isn't there? Yes, sir. Mr. Jimenez did see the testimony, but he did not testify that he didn't think he was getting the benefits. He just testified... So he saw the letter, but he didn't... That's correct. ...say what he made of the letter. Okay. But that finding does buttress Judge Seiler's point that you might put things in sealed envelopes or whatever, but when you send something like that, that important to 25 people, the others are going to find out about it. May I answer? Yes. It's possible that they would find out, but the record doesn't show that they all found out, and the record doesn't show that they thought there was an adverse impact. Okay, thank you, counsel. We'll hear from your advocate. Thank you. Counsel, I know it's not your appeal. You're defending the appeal, but what's actually at stake here? Well, Your Honor, may it please the court, Jared Kant on behalf of the labor board. Your Honor, this is our case. The lead docket number is an application... Oh, that's true. Yeah, enforcement. And then respectfully, to answer your question, there is money at stake. There is a make whole remedy in this case that the board orders. So obviously, as with any board decision, the board has a vested institutional interest in having it enforced, but in terms of the actual employees at stake, it's the make whole relief for the period of time between March 23rd of 2012, when they supposedly got it sometime in 2013, and then six plus years worth of compounding interest computed daily. Okay. So there is a very... It's a live controversy. Hmm? It's a live controversy. Yes, yes, definitely, Your Honor. You'd agree, would you not, that a violation of 8A1 or 8A3 requires consideration of the employer's motives? Yes, Your Honor. The board is not disputing that. So where on remand did the board follow the instruction of this court to open the record to examine what the motives of Woodcrest were? Well, Your Honor, there's two parts to that. One, respectfully, I don't read and the board did not read the decision as requiring the reopening of the record. The company never made that argument to the board in its position statement that the court had told it. That argument didn't appear until its opening brief. All right, but if it doesn't reopen the record, it's got to cite something in the prior record that it made... Correct, Your Honor. ...conservative of motive. Correct, Your Honor. And here, they articulated a legitimate business reason, and I don't see anything in the record that rebuts that legitimate business reason. Well, again, two points, Your Honor. First, I believe it starts at pages 4 through 6 of the board's decision and order, and I don't have the JA sites memorized for that, but I can look it up. That's where the board applies Great Dane. And Great Dane is a test where you infer unlawful motivation from discriminatory conduct. And so that's the first step that the board did here. What's discriminatory about their legitimate business reason? There's nothing. It's a legitimate reason. There's nothing discriminatory about it. It's a business reason. Well, Your Honor, the Great Dane test first looks at the conduct. The analysis of what their justification for is then when the burden has shifted to them, which it did in this case. I'm granting you that. I'm assuming that the burden shifted to them. Okay, Your Honor, yes. And now they've proffered two reasons, right? And the first is we changed up the terms of the plan, and not just we, Woodcrest, but the entire system, right, announced a change in terms of the plan. The employees were upset about that, so they were going to change it back. That's a legitimate reason, and I'm scouring the record. I'm not finding any finding by the board or, indeed, any evidence to undermine that legitimate reason. Well, where is it? Your Honor, that's because the board found that they had not proved that these were their actual motivations, that there was no evidence that this was what was actually motivated. So it was pretextual? Well, Your Honor, the board doesn't make a pretext finding. I believe former member Pearson, his concurrence, talks about that. So in your view, then, when they articulate this legitimate business reason, your view is that the board can simply say, no, it's not, and that is sufficient to undermine their reason. No, Your Honor, what I'm saying and what the board said is that, and this is consistent with Great Dane and with Frick, is that you need, when we're fighting about motive, and I believe that's how they open it, this is a case about motive, they need to, indeed, articulate a substantial and legitimate justification, so they couldn't come up with a plainly illegitimate motive. But then, because we're talking about motive, they need to prove that that's what was actually motivating them at the time. That is their burden there. They have a stipulation in the record that says that this happened. Well, Your Honor, that stipulation, well, there's two points. First, that goes as to why they decided to make this announcement. That's separate then from then why they withheld it. But the evidence that they're relying on is not supporting the justification that they're now presenting. Their argument throughout their brief is that the plan's viability was at stake, and so it had to make this announcement, or it had to make these improvements. The record stipulation simply says some employees dropped or changed their coverage. That respectfully does not go to support the argument that the viability was at stake, and the second point being that while that was in the stipulation, what they did, they're still, that that was motivating them. That where's the relevant testimony from anyone involved that we made these decisions because the viability is at stake, which is the argument that they're, that's the justification they're making. Not that people were complaining. Their brief and reply brief were very clear that it was because the viability of the plan was at stake, it had to make these changes. The stipulation doesn't go to that, and it doesn't actually support that. So you're saying this is sort of a post hoc forfeited argument, I guess. The new found employer justifications, I guess, right? Well, Your Honor, the board doesn't in its decision call out the employer for shifting. Well, I'm asking you if you are. No, Your Honor. Our brief, we don't make pretext. We did not invoke Section 10E. As I did point out earlier, this whole argument that the court had directed the board to reopen the record doesn't appear until their opening brief. And indeed, going back to the colloquy before, I kind of wonder if during the center's opening argument, it would finally start indicating what evidence it would actually have put on. In their position statement in front of the board, besides not saying that the court had directed the record to be opened, all it said was, if we lose, then you should reopen the record. There's nothing in there consistent with board regulation, even if no motion, assuming no motion is required, there's nothing in there saying, oh, there's no proffer. This is the evidence that we would put on. What is the board regulation? I'm sorry. The board regulation governs reopening of the record, and it's cited in our brief. And the regulation is 29 CFR 102.48C1. And when a party wants to reopen the record, it must state briefly the additional evidence that is going to be sought to be adduced, why it was not presented previously, and if adduced and credited, it would require a different result. Right. But your argument is, as I understand what was said by Mr. Mitchell and in the briefing, your argument is that based on this court's remand, they could prevail on remand without reopening the record, but they couldn't lose unless the record was reopened. And the reason for that was because they had already shifted the burden to the board. I mean, they might be making those arguments, but I respectfully don't see that. It all comes down to whether they shifted the burden, really. If the stipulations were sufficient to shift the burden, then you would need for the board to prevail, you would need a hearing so that the board could carry its burden. But I understand your argument is that never happened because these stipulations were insufficient to shift the burden. They had to proffer evidence in order to get the benefit of that burden shifting. Is that the essence of your argument? Correct, Your Honor. First, that I would be speculating whether if the board had in fact found they had met their burden, whether the board could have on this record still come back and said, we find actual evidence or specific evidence essentially to rebut their evidence. So I don't know. Maybe the board could have, but it's also very likely that the board at that point would have reopened. And I also want to be clear just for the sake of argument that although the stipulation has been much talked about in their brief, they do rely on this testimony of Ms. Cherise Steele. So there is more than just the stipulation that they rely on. In our brief, we go point through point, expanding on the board's reasoning as necessary based on their opening brief, to go through how that evidence is either essentially not going to the point that they're making, it doesn't support their point, or really to the fundamental point, again, that this is a case about motivation. And where the board has met its obligation that this was discriminatory conduct that could have adversely affected employee rights to some extent, and now it's the burden's on the company to show that it was motivated, motivated by a substantial and legitimate business justification. So let's be clear on the steps, because it does look a lot like, you know, the McDonnell Douglas burden shifting in an employment discrimination case. But is the second step different? Because in McDonnell Douglas, it's just articulating a legitimate reason. In this instance, is it a little bit more? Do you have to actually prove or establish it? I do see that as a little bit more. And admittedly, the last time I looked at McDonnell Douglas was more than a decade ago. But, you know, when we look at Great Dane, it says, well, why do we shift the burden back to the employer after the board gets this inference of unlawful motive? And the Supreme Court in Great Dane says, because proof of motivation is most accessible to the employer, that it was in the position to put on these people from the health insurance industry and decision makers saying, we had to make this decision five days before the election because of X, or emails, or any type of contemporaneous documentation or testimony going to that it was actually motivated by these reasons. Again, accepting for the sake of argument. So it's more than just articulating, which is McDonnell Douglas. I understand you haven't looked at that for a while. But we have four of those cases every sitting. We have one of yours a year, so. Yes, Your Honor. I think as we make clear in our brief and as Frick makes clear and Hudson Transit lines from this court, that the burden on them is to put in evidence proving that they were in fact motivated by a good motivation. And then the burden, of course, would have shifted back to the board to show, to then make the threshold determination about whether this was inherently destructive or comparatively slight, and then to say, okay, yes, you've proven this, but we have a trump card or game over. But isn't there evidence to the record of the business motivation and the motivation that I think Steele testified to, which was to avoid violating the law? Did she testify to that? No, Your Honor. I thought she testified about the way they put the letter together to the 25 uncovered workers. No. Ms. Steele's testimony, and she didn't know whether it was 50 or 100 had gone out this way, her testimony simply shows that the memorandum announcing these improvements were included in employees with employees' paychecks who were going to be getting it. Her testimony, despite the fact that their brief constantly talks about sealed envelopes, her testimony says nothing about sealed envelopes. Her testimony simply, her testimony sheds no light on the foundation, the weight that they're putting on it that this was some special effort to keep this secret, as opposed to many places where I've worked. If there's an announcement, it's put in your paycheck envelope, sometimes not necessarily even sealed. It's just a closed envelope with your paycheck and an announcement. So it's your position there's no evidence put into the record by Woodcrest that they were attempting to comply with the law? No, Your Honor, that there's no evidence that that's what, in fact, was motivating them. And I'll leave it to our brief because I know I'm over on time. And then I'll just lastly close in saying the board hasn't in any event, and we expand on it in our briefs how that argument is contrary to board law in any event. Thank you, Your Honor. Thank you. Counsel, I think you have. Oh, I'm sorry. Right, right. Catherine Hansen on behalf of the intervener 1199. Good morning. The first point I'd like to make is that the employer's burden under Great Dane is to establish a legitimate and substantial business justification for the discriminatory conduct that's at issue. Here, that is the benefit withholding, not the decision to improve benefits systemwide. In fact, because the employer had a reason for improving the benefits systemwide, that is precisely why they were required to improve them for the unit employees at the very same time they did so for all. Wait a minute. If they had done that, they would have been rightly accused of suspicious timing of trying to influence the election. And they argued that. They said, you know, we're trying to comply with the law. They were essentially, as I understand their argument, they said, we're trying to thread the needle. We've got employees that are outraged or upset, dropping out of the plan because of the January announcement. And they do effectuate that change at the other three locations. Right. But they can't. If they effectuate that change wholesale at Woodcrest, they're going to be rightly accused of trying to influence the voting. In fact, Your Honor, decades of board loss say the opposite. Systemwide, a system wide grant of benefits prior to an election does not create an inference of unlawful motive, precisely because it is presumed that a decision made system wide was made absent considerations of the union activity going on at one facility. The D.C. Circuit on facts exactly like this reached the same conclusion. We're asking the Third Circuit to reach here and said specifically, you know, there was no basis for confusion here. The company cites no case to show that it should have was or should have been confused about what its obligations were under the law. And this court in remanding said, if your argument is that you had difficulty navigating the law, that's not going to save you here. So the question for the court under Great Dane is whether the employer presented a substantial and legitimate business justification for discriminating against unit employees by withholding these benefits. So while I don't think the evidence supports their claim, the viability of the plan was at stake. It's also not relevant to why they withheld the benefits from unit employees. All right. So the only the only thing that can save them on that is complying with the law. And you're saying that that's a legal fallacy because if they had studied the law, they would have known that the system wide change would have insulated them from an allegation that they were trying to influence the voting. Absolutely. And not only that, this court has held consistent with board law, with court approval for years, that a difficulty navigating the law, even if honestly held, is not a defense to discriminatory conduct. But, yes, I would argue here there was absolutely no basis for any confusion about what that sounds like. That sounds like a compelling argument. But didn't the board have to articulate that? Aren't we reviewing for substantial evidence in the record? And didn't the board say sort of in an internally contradictory way that Woodcrest failed to assert any proper motive? And then at the same time, in its opinion, criticized Woodcrest by saying it's assertive motive, that it's asserted motives were unsupported or illegitimate. You can't do both of those things at the same time. Right. Well, no, I think what the board said was even the proffered reasons on remand. This court gave the employer, in my view, a really good chance to say, look, just tell us what you would say. Right. If you had a chance under Great Dane, tell us what you would say. They came up with some post hoc explanations and the board said there's no evidence of that. But even if there was, those would not be substantial and legitimate business justifications sufficient to rebut the inference of unlawful motive. The board says on Joint Appendix 34, the inference of wrongful motive is left intact, that the employer did nothing to rebut the inference created by discriminatory conduct that could adversely impact employees rights. And so, you know, I don't think there's any reason. And I don't think there's any fair reading of this court's decision to say that the board should have, let alone was required to reopen the record when the proffered reasons were not legitimate and substantial business justifications, particularly in light of this court's footnote that says, you know, don't come back to us with a difficulty navigating the law. That's not going to help you here. And the board's determination about what is a legitimate and substantial business justification is entitled to extreme deference. And the employers don't cite any case to the contrary. So under Great Dane, I submit that this is a very straightforward case. Discriminatory conduct that could have adversely impacted employees rights to some extent. No evidence of a legitimate and substantial business justification. Therefore, the inference of unlawful motive stands and the conduct is unlawful. Thank you, counsel. Thank you. Briefly, I would note that the system wide approach is not carefree. There's lots of cases out there where a system wide approach has been taken. All right. Before you get to that, I think there's a threshold issue in my mind, at least, which is what what Ms. Hansen just argued is that you've you've articulated it as a business necessity or business justification. Right. To change the plan. But she points out that it has to be just you have to justify the differential treatment. So in other words, it might have been fine for you to change the terms of your plan, but you can't change the terms of the plan for the uncovered folks and not for the covered folks. Well, what's wrong with that? That seems like a logical argument. Well, because we would have gotten a charge for for trying to interfere with the election. All right. Then then that's what I thought you were going to say. So what that tells us, I think, is that you must rest on obeying the law as your justification. That is our justification. OK, so the other ones set aside, you're saying we had no choice, but to do it this way because we would have been hit with an unfair label, label practice for trying to influence the election. The reason we put forward the evidence about the integrity of the plan is to explain why we made the decision, but why we did what we did, why we discriminated was because we were trying to maintain the integrity of the election, which was in our affirmative defense in the answer. All right. So the whole case comes down to whether and that dovetails into their argument that you could have taken advantage of the safe harbor. You know, this course already explained that the safe harbor can't be used as a sword. And the the act does not guarantee there's a Vesuvius case. The Vesuvius case says that the act doesn't necessarily guarantee that the company is going to make the best business decision, but that that business decision is not going to be discriminatory or anti-union. Hindsight 2020 maybe should have taken the safe harbor. But what we did was not unlawful and what we did was not intended was not unlawful. All right. Thank you, counsel. Thank you. We will take the case under advisement and thank counsel for their excellent.